CASE 82.—ACTION BY CANNON & BYERS MILLINERY COM-
PANY AGAINST THE PHILADELPHIA CASUALTY
CO. ON A POLICY OF CREDIT INSURANCE.—May
12, 1909.

# Philadelphia Casualty Co. v. Cannon & Byers Millinery Co.

Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

SAMUEL B. KIRBY, Judge.

Judgment for plaintiff, defendant appeals and plaintiff takes a cross appeal.—Reversed on the original appeal and affirmed on the cross appeal.

1.  Insurance—Credit Insurance—Construction of Policy—"Ex-
    perience."—A policy of credit insurance made the "experi-
    ence" of the insured in dealing with its customers the basis
    of credit, and then provided that the highest previous indebt-
    edness should be taken as an "experience" which would jus-
    tify the indemnified in again extending credit to an old
    customer. Held, that the term "experience" meant a busi-
    ness transaction which was closed, since until the goods for
    which the credit was extended were paid for, and the trans-
    action closed, the creditor would not be justified in extend-
    ing further credit.
2.  Insurance—Credit Insurance—Construction of Policy—Addi-
    tional Credit—Effect of Return of Goods Previously Sold.—
    Where goods shipped C. O. D. were returned because the
    customer was unable to pay for them, this would be such an
    experience as would not warrant the extension of further
    credit to him, within the provision of a policy of credit in-
    surance providing that the highest previous indebtedness
    should be taken as an experience, which would justify the
    indemnified in again extending credit to an old customer, but,
    if the goods were returned because not of the character
    bought or contracted for, the transaction should be entirely
    ignored, and credit might be extended to such customer as
    though the transaction had never taken place.
3.  Insurance—Credit Insurance—Construction of Policy—Pre-
    vious Experience—Execution of Note—"Experience."—The
    execution of a note in payment for goods sold on credit did
    not, until payment of the note close the transaction, so as

to render it an "experience" which would justify the creditor in again extending credit to an old customer.

4. Insurance—Credit Insurance—Construction of Policy.—A policy of credit insurance provided that, before being entitled to payment under the policy, the insured must first sustain an "initial loss," which was fixed at three-quarters of 1 per cent, of the gross business done by the insured, based upon his experience the previous year, and provided also that, if his total gross business should exceed the sum used as a basis, then the initial loss should be correspondingly increased. By a "rider" the policy was made to relate back to cover all outstanding accounts which had been created during the regular course of business in the six months preceeding the date of the policy. Held, that the effect of the rider was simply to antedate the policy six months, and hence accounts made during such time must be treated as a part of the gross business done by insured during the life of the policy, for the purpose of determining the initial loss.

5. Insurance—Credit Insurance—Construction of Policy—"First Bill."—A policy of credit insurance insured a dealer against loss which he might sustain on account of nonpayment of the first bill for goods sold to new customers, which was not to be in excess of $400. Held, that "first bill" meant the particular articles contracted for at one time, without regard to the time within which the bill therefor should be paid, and did not include all goods, not exceeding $400, which were sold and delivered between the first sale and the maturity of the bill therefor.

6. Insurance—Credit Insurance—Salvage—Application of.— Where a policy of credit insurance makes no provision as to the application of salvage, the insured is entitled to make such application of the salvage recovered by him as is beneficial to his interests, and hence may apply it to the discharge of those debts for which he holds no security and for the loss of which he is not indemnified.

7. Insurance—Action on Policy—Evidence.—Where a policy of credit insurance provided that the insured should be indemnified against loss on account of sales of goods of the kind usually dealt in by the insured, and the accounts taken from the books of the insured showed the character of goods to be such as the insured dealt in, the items themselves furnished the best evidence as to the character of the goods sold, and hence no additional proof as to their character was required.

8. Insurance—Credit Insurance—Construction of Policy.—A policy of credit insurance should not be so narrowly construed as to place upon the insured any unreasonable or unnecessary labor or expense in the presentation of his claim, nor should it be so liberally construed as to place upon the insurance company a liability which, by the fair construction of the terms of the policy, it had not contracted to assume.

9. Insurance—Credit Insurance—Action on Policy—Evidence— Sufficiency.—Where, in an action on a policy of credit insurance, insured showed by evidence of its bookkeeper, speaking from the books of account before him, that he had

sold and delivered to its various customers, whose accounts were involved in the action, the particular bills of goods set forth in the items of account filed with his deposition, and that these goods were not paid for, and accompanied his statements with such evidence of debt or insolvency in each particular case as the insured had received after investigation made, it established a prima facie case entitling it to judgment, in the absence of any claim or showing to the contrary.

GIFFORD & STEINFIELD for appellant.

R. C. KINKEAD for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

The Philadelphia Casualty Company issued to the Cannon & Byers Millinery Company a "credit bond," or policy of insurance against loss not exceeding $3,000, which it might sustain by reason of credit extended to its customers between July 1, 1903, and July 1, 1904. At the end of the period covered by the policy, the millinery company claimed that it had sustained a loss in excess of $3,000, and demanded payment of the full amount of the indemnity provided for in the policy. The insurance company denied liability, and the millinery company brought suit on the bond. Issue was joined on the question of liability under the terms of the policy, and because of the conflicting nature of the matters of account involved the case was, on motion of defendant, transferred to equity and referred to the commissioner to hear proof. This was done, and the result of the commissioner's finding reported to court. On exceptions to this report, the case was tried by the chancellor, and judgment was returned in favor of plaintiff for $1,140.87. From that judgment this appeal is prosecuted by the casualty company, and the millinery company has prosecuted a cross-appeal.

As the ultimate liability of the insurance company is made to depend upon the construction that is placed upon the many provisions and conditions with which the policy is hedged about, when read in connection with the various "riders" thereto subsequently attached, it becomes necessary to analyze, consider, and determine the meaning of each of said provisions, conditions, and "riders" when taken in connection with the others for, in this way only, can the rights of the parties to this litigation be determined.

The introduction of credit insurance in commercial life is of practically recent date, not only in Kentucky, but in the United States as well, and this court has not heretofore been called upon to construe any contract of this character; nor are we familiar with the decision of any court construing a contract of insurance similar to that presented in this case. Most all insurance of this character is based upon credit ratings as given by recognized commercial agencies, such as Dun or Bradstreet; but this contract is based upon "experience," and the "experience" of the insured, in dealing with its customers, is made the basis of credit. Some confusion has arisen in the practical application of this term. Appellee contends that it means "business transactions," while appellant's interpretation of it is "a business transaction which is closed" that is, the sale of a bill of goods for which the purchaser has paid. This latter is evidently the meaning that should be given the term as used in the policy, for, in fixing the basis of credit, the policy further provides that the highest previous indebtedness shall be taken as an "experience" which will justify the indemnified in again ex-

tending credit to an old customer. Now an indebtedness which has not been paid could not be called a "previous" indebtedness, for it would be a present indebtedness. An experience which would justify a creditor in again extending credit to a debtor must be a satisfactory experience, and no experience could be said to be satisfactory unless the goods sold were paid for.

Two questions of difference have arisen in the construction of this clause of the contract: First, where goods have been sold, and later returned; and, second, where the evidence of the indebtedness for the goods sold has been changed by the execution of a note for the account. In each of these instances it is the contention of appellees that it was entitled to extend to such creditor further credit; whereas, appellant takes the contrary view. In regard to goods returned, it seems that the reason for their being returned would have to be taken into consideration in determining whether or not further credit might be extended to such customer. If the goods had been shipped C. O. D., and were returned because the customer was unable to pay for and receive them, this would be such an experience as would not warrant further credit. On the other hand, if they were returned because not of the character bought or contracted for, then this transaction should be entirely ignored, and credit might be extended to such customer as though the transaction in which the return of the goods was involved had not taken place. The execution of a note for an account in no wise lessened the creditor's liability. It merely changed the form of the evidence of the debt, and could not be accepted as satisfying the indebtedness. While by

the execution of a note, the indebtedness might be
said to be placed in a more satisfactory form, still
it could only be satisfied by payment, and the execu-
tion of a note for an account does not constitute such
an experience as would justify further extension of
credit.

The policy does not insure against all losses, but
only such as may be incurred under certain stipula-
tions. It appears that the insured must first sustain
what is termed the "initial loss," and this is, by the
policy, fixed at three-fourths of 1 per cent. of the
gross business done by the insured, based upon his
experience the previous year, when his total busi-
ness was $200,000. The initial loss which the insured
must stand was, on this basis, fixed at $1,500; but the
policy provided that, if his total gross business
should exceed $200,000, then the initial loss would be
correspondingly increased. No difficulty arose over
this clause of the policy; but, by an agreement enter-
ed into after the date of the policy, and evidenced by
what is termed a "rider," the policy was made to
relate back, so as to cover all outstanding accounts
which had been created during the regular course
of business in the six months next before the date
of the policy. Appellee contends that these accounts
are covered by the policy, no matter how created,
while appellant insists that they are to be treated as
though they were created after the issue of the
policy, and are subject to the restrictions and limita-
tions thrown around such accounts. As the supple-
mental agreement, or "rider," provides that these
accounts shall be "covered upon the same conditions,
and shall be included in the same manner as if the
goods had been shipped since July 1, 1903," there

is left little room for doubt upon this point, for the effect of this clause in the "rider" is simply to ante-date the policy six months, and hence all accounts created in that period are governed and controlled by the policy just as though they had been created after its issue. As these accounts are covered on the same conditions as accounts created after the date of the policy, they must be treated as constituting a part of the gross business done by the insured during the life of the policy, and hence must be taken into account in determining the initial loss. The effect of the sup-plemental agreement covering the accounts for goods sold during the six months next before the date of the policy was simply to increase the gross business done by the company during the life of the policy to the amount of such accounts, and, as the initial loss is to be determined by taking three-fourths of 1 per cent. of the gross business, the chancellor erred in not taking these accounts into consideration as con-situting a part of the gross business.

Another item of dispute is as to the meaning of the term "first bill," as used in the policy. Appellee contends that there should be included in this term all goods, not exceeding $400 in value, that are sold and delivered between the date of the first sale and the maturity of the bill therefor; whereas, appellant urges that only such goods as were actually sold at one time should be treated as a "first bill." This latter is the only reasonable construction that can be placed upon the term. Any other construction would enable the insured to hold the company liable for all goods, up to $400 in value, that it might sell during the period covered by the policy, if the time of pay-ment of the bill of goods first ordered should be ex-

tended to the date of the expiration of the policy.
Evidently no such condition of credit as this was con-
templated by the insurance company, and it would
require a strained construction to uphold this conten-
tion. "First bill" means the particular articles con-
tracted for at one time without regard to the time
within which the bill therefor should be paid.

Two classes of customers are dealt with in the
policy; those with whom the insured had previously
dealt being termed "old customers," and all others
"new customers." The insured, under the terms of
the policy, is indemnified against loss on account of
goods sold to old customers where the sale does not
exceed the highest previous indebtedness of said old
customer to the insured within 12 months next be-
fore the issual of the policy, and he is indemnified to
the extent of 50 per cent. of any loss he may sustain
on account of goods sold to new customers; provided,
however, that no sale to any new customer shall ex-
ceed $400. All customers, new and old alike, under
the terms of the policy, are permitted to make addi-
tional purchases during the life of the policy, and
such new purchases may, at any time, equal the full
amount of the previous indebtedness, and 50 per cent.
thereof in addition. Such addition is treated as a
sale to a new customer, and is only covered to the ex-
tent of 50 per cent. Thus, if an old customer had,
during the year, purchased and paid for a bill of
$800, he would be permitted, under the terms of the
policy, to purchase a bill of goods of the value of
$1,200, being the value of the amount of the highest
previous indebtedness, plus 50 per cent. thereof; but
the insured would only be indemnified, on account of
this credit, to the extent of $800, plus one-half of the

increase, which is $200, making his total indemnity $1,000. And, it is further provided that the insurance company shall, in no event, be liable for more than $1,000 on any single account.

Another difference of opinion has arisen as to the proper application of salvage. The policy makes no provision as to the application thereof. Appellant urges that the credit for salvage should be applied, in the absence of a contract to the contrary, to the discharge of that debt upon which, or for which, it was bound; whereas, appellee contends that any salvage recovered should be applied to the discharge of those debts for which it held no security, and for the loss of which it was not indemnified. We are of the opinion that as the policy of insurance, which is the contract between the parties, is silent upon this question, appellee had a right to make such application of the salvage as was most beneficial to its interests. In this particular the insured is certainly to be placed at no greater disadvantage than any other creditor, and the rule is well settled in this State, and elsewhere, that, where a creditor holds claims, secured and unsecured, against a debtor, and makes collection from said debtor, he has a right, in the absence of any direction to the contrary, to apply same toward the discharge of the unsecured claim, and, applying this rule to the case at bar, appellant is in no condition to complain because appellee allowed credit for salvage received, upon accounts for which appellant was not liable.

The policy provides that the insured shall be indemnified against loss on account of sales of goods of the kind usually dealt in and owned by the insured, and appellant insists that the evidence in this case

fails to show that appellee was the sole owner of the goods sold to the various customers whose accounts are involved in this litigation, or that such goods as it did sell were of the kind usually dealt in by appellee. This contention is highly technical. The accounts taken from the books of the insured, in each instance, show the character of goods to be such as appellee dealt in. The items themselves furnish the best evidence as to the kind or character of goods sold and delivered in each instance. This being true, and these various items being the character of goods in which appellee dealt, no further evidence upon this point should or could reasonably be required. Additional proof should not be required to supplement the evidence furnished by the account itself, unless the items of goods as shown in the account, fail to disclose the fact that they were of the character usually carried and dealt in by the insured. With the books of the insured open for the inspection of appellant, it could have easily discovered that the respective bills, or any of them, were not of the kind or character dealt in by appellee if such had been the case, and the fact that appellant cites no case where the goods so sold and delivered were not of the character usually dealt in by appellee, after it has had an opportunity to inspect the books while the proof was being taken before the commissioner, is the best evidence that there is no merit in this contention.

The policy should not be so narrowly construed as to place upon the insured any unreasonable or unnecessary labor or expense in the presentation of its claim. On the other hand, it should not be so liberally construed as to place upon the insurance company a liability which, by a fair construction of the terms of

the policy, it had not contracted to assume. When the appellee showed, by the evidence of its book-keeper, speaking from the records before him, that it had sold and delivered to its various customers, whose accounts were involved in this litigation, the particular bills of goods set forth in the items of account filed with his deposition, and that these goods were not paid for, and accompanied his statement with such evidence of debt or insolvency in each particular case as the insured had received after investigation made, it established a prima facie case—one upon which the chancellor was warranted in entering judgment in the absence of any claim or showing to the contrary. It is true that, in most instances, appellee might have made its claim stronger by introducing other evidence to show the failure of the different creditors whose accounts were involved; but this would have entailed, necessarily, much additional and perhaps unnecessary expense, which, in the end, if any liability attaches, would have to be borne by the appellant. When appellee had furnished to appellant such evidences showing insolvency in each particular case as it had at hand, appellant could have shown, had the facts warranted it, that these various creditors, for whose accounts appellee was seeking to be indemnified, were not in fact insolvent. Its failure to do so, or to make any effort to do so by introducing evidence of any character, while not conclusive, is persuasive that it was unable to do so.

Thirty-nine different accounts are involved in this litigation. There is a wide difference between the finding of the commissioner and the judgment by the court as to the extent of the insurance company's liability. This difference grows out of the different

construction which the commissioner and the chancellor placed upon the various conditions and "riders" contained in and attached to the policy. The construction placed by the chancellor upon the provisions of the policy, and the "riders" thereto attached, were, with two exceptions, in accordance with the view herein expressed. His interpretation of what constituted a "first bill" was more favorable to the insured than it should have been, inasmuch as he included in this item all goods furnished to a new creditor by the insured, up to the value of $400, before the maturity of the claim for the first items of such account; whereas, he should have construed the term "first bill" as hereinbefore indicated. Likewise, his interpretation of the initial loss clause was more favorable to the insured than it should have been, in that he excluded from his consideration in fixing the initial loss the accounts for bills of goods sold during the six months next before the date of the policy. These should have been taken into account by him in determining the initial loss, as they clearly constituted a part of the gross business done by the company within the meaning of the provisions of the policy.

For these reasons the judgment is reversed on the original appeal, and affirmed on the cross-appeal, and the case is remanded, with instructions to the chancellor to enter judgment in favor of the insured in accordance with the interpretation of the various provisions of the contract of insurance as above set out.

Petition of appellant for rehearing and extension of opinion overruled.