STEINWENDER et al. v. PHILADELPHIA CASUALTY CO.

(Supreme Court, Appellate Division, First Department.  December 9, 1910.)

1. INSURANCE (§ 511*)—INDEMNITY POLICY—CONSTRUCTION.

The application for a credit indemnity bond, which insured against losses in plaintiff's business from bad debts, which was made a part of the bond, provided that experience shall be the basis for credit under the bond as specified in Schedule A, the ordinary printed provisions of the bond, making the commercial agency rating the basis of credit, being stricken out and the "experience basis" substituted therefor, and Schedule A insured plaintiff against losses from a customer to an amount not exceeding the highest previous indebtedness for goods shipped by the indemnified to the debtor within 24 months prior to- the shipping of the first item of the goods, included in the account upon which the loss occurred, and the bond provided that the insurer should not be liable until the losses covered by it exceeded $5,100 on sales and shipments not exceeding a certain sum. *Held*, that the provision limiting the insurer's liability to the highest previous indebtedness, etc., meant the highest indebtedness of a customer which had been paid previous to the execution of the bond, so that the insurer was not liable ·for losses from a customer whose highest previous paid indebtedness was only $4,554.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 511.*]

2. WORDS AND PHRASES—"EXPERIENCE."

The term "experience," as ordinarily understood, means knowledge gained by observation or trial.

3. INSURANCE (§ 511*)—INDEMNITY POLICY—CONSTRUCTION.

A credit indemnity bond insured against losses from a customer to an amount not exceeding the highest previous indebtedness for goods shipped to the debtor within 24 months prior to the shipping of the first item of the goods included in the account upon which the loss occurred, and that the insurer should not be liable until the losses covered by the bond exceeded $5,100 on shipments not exceeding a certain sum, and further pro-. vided that outstandings on plaintiff's books January 1, 1903, shipped since September 1, 1902, should be covered upon the same conditions and included in the same manner as if the goods had been shipped since January 1, 1903. *Held*, that since the clause last referred to made the bond cover shipments after September 1, 1902, the 24 months provided in the clause limiting the insurer's liability was also thereby made to relate back so as to include the highest previous indebtedness within 24 months prior to September 1, 1902, so that the insurer was not liable for losses from a customer, whose paid-up indebtedness within such 24 months was less than the initial indebtedness of $5,100 at which the insurer's liability began.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 511.*]

4. INSURANCE (§ 540*)—INDEMNITY POLICY—PERFORMANCE OF CONDITION—ACCOUNT WITH CUSTOMERS.

Where a credit indemnity bond provided that experience and not the commercial agency rating of insured's customers should be the basis for credit under the bond, the insurer was not liable for losses from a customer if a copy of insured's account showing his prior experience with such customer was not attached to the preliminary notice of loss as contemplated by the bond, which provided that the loss on any customer with whom insured had had previous experience should not be covered by the bond unless the preliminary notice of loss had attached to it; a copy of the account showing the prior. experience with such debtor.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 540.*]

Ingraham, P. J., dissenting in part.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Judgment on Report of Referee.

Action by Julius Steinwender and others against the Philadelphia Casualty Company. From a judgment in part for plaintiff, both parties appeal. Affirmed as modified.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Leo G. Rosenblatt, for plaintiffs.

Joab H. Banton, for defendant.

SCOTT, J. This is an action upon what is described as a credit indemnity bond, being in effect a policy of insurance against losses in business resulting from bad debts. The contract between the parties is evidenced by a number of papers including the application, the bond, and several riders or schedules. It would seem that the terms of the contract must have been the result of negotiations, for what appears to be the regular printed forms ordinarily used by defendant are much interlined and otherwise modified by the attached riders, so that the precise contract is to be ascertained only by careful reading. The application signed by the plaintiffs is for a credit indemnity bond to commence on the 1st day of January, 1903, and to terminate at the end of one year therefrom. It provided for what is called an initial loss to be borne by the insured before any liability should attach to the insurer in the following terms:

"When the losses covered under the terms and conditions of said bond shall exceed $5,000 on sales and shipments not exceeding $1,500,000, and the same proportion for sales and shipments in excess thereof, the bond is to cover excess losses not exceeding $20,000."

The amount of initial loss was afterwards fixed at $5,100 on sales and shipments not exceeding $1,750,000. Then followed the following clause, which, with the corresponding and relevant clauses in the bond and attached riders, has raised one of the questions to be determined upon this appeal, viz.:

"Experience shall be the basis for credit under the bond as specified in Schedule A with a single account limit not exceeding $10,000 shall be covered by the bond."

Then followed a statement, said to be made to enable defendant to determine as to whether the amount of loss to be first borne by plaintiffs, before defendant's liability commences is a sufficient sum, that plaintiffs' "net losses for the past five years have not exceeded an average of $5,000." There was exhibited to plaintiffs at the time the application was signed a paper, called "Schedule A," which contained a list of some 13 acts on the part of or with reference to a debtor which will be accepted as evidence of insolvency upon the part of a debtor. The schedule containing this list does not appear to have been physically attached to either the application or the bond, but it is signed by defendant, and undoubtedly is one of the papers constituting the contract between the parties. It is provided in this schedule that the fact indicating insolvency shall be mentioned on the preliminary proof of loss.

The bond itself is stated to be made in consideration of the application and of the payment of the premium, and by its terms the defendant agrees to indemnify plaintiffs to an amount not exceeding $20,000, "subject to the following limitations, conditions and agreements." The term of the bond and the amount of the initial loss to be borne in the first instance by defendants follow the terms of the application. The indemnity is said to be made subject to two provisos designated "a" and "b." The proviso designated "b" has to do with what shall be deemed evidence of insolvency, and was superseded by the Schedule A, above referred to, and is not important upon this appeal. The proviso designated "a" reads as follows:

"That such losses shall have been sustained on claims against debtors covered by Schedule A attached hereto signed by the company and which is made a part hereof."

Then follows a clause of the bond denominated "Second," which evidently refers to the above-quoted proviso "a," and which reads as follows:

"The amount set opposite a rating on said Schedule A, shall be the largest sum for which a debtor possessing such rating is covered, but in no event shall such sum exceed $10,000 hereinafter called the single account limit. Should the claim of the indemnified against a debtor exceed the sum covered by said Schedule A only a pro rata part of any amount collected or made secure on such claim shall be deducted from the amount covered by the bond."

Some apparent confusion has arisen because several of the riders going to make up the contract are denominated Schedule A, but it is quite evident that the paper referred to by that designation is one attached to the bond, and which consists of a printed form on which most of the printed matter has been stricken out, and written or typewritten matter filled in. The paper is headed with the name of a well-known mercantile agency, below which is the legend: "Ratings of first and second grades with the amount of credit for each respective rating." After the statement that no single account shall be covered for more than $10,000, there appeared in print, but was stricken out, a list of 19 ratings, with a sum of money opposite each. It is not difficult to understand how and why these ratings came to be erased. It is apparent from the printed forms used for the application, bond, and Schedule A attached that they were prepared with a view to basing the defendants' liability, as to any debtor who might default, upon that debtor's rating with one of the mercantile agencies. In the case of these plaintiffs, it was agreed that "experience" should be the test, instead of rating, and it was attempted by erasure and interlineation to adapt the forms appropriate to a limitation of liability by "rating" to a limitation by "experience." It is unnecessary to go in detail into the changes which were made to effect this purpose. That has been carefully done by the learned referee. The result is that the defendant undertook to indemnify or insure plaintiffs against loss by a customer to "an amount not exceeding the highest previous indebtedness for goods shipped by the indemnified to the debtor within 24 months prior to shipping the first item of the goods included in the account upon which the loss occurred,

not exceeding $10,000." The defendants' appeal raises the question as to the proper construction and true intent of this limitation of liability. It arises with respect to a loss caused by the insolvency of one of plaintiffs' customers named the Consumers' Coffee Company, which the referee has held to be a recoverable claim under the terms of the bond. The Consumers' Coffee Company had been purchasing goods from plaintiffs since December, 1901, on 60 days' credit. Almost from the beginning this company had fallen behindhand in its payments, and on March 2, 1902, it owed a balance of $4,554.50, which was afterwards paid, and which was the highest indebtedness previous to the issuance of the indemnity bond which had been paid when that bond was taken out. Between September 1, 1902, and January 1, 1903, when the bond was issued, the plaintiffs sold goods to the Consumers' Coffee Company, amounting to $11,211.40, all of which remained unpaid on said January 1, 1903. Other sales were made after January 1, 1903, bringing the amount up to a figure which realized a loss of $14,102.97. If the "highest previous indebtedness" specified in the contract as the limit of defendants' liability means the highest indebtedness which had been paid previous to taking out the bond, the plaintiffs can recover nothing on account of the Consumers' Coffee Company's loss, for, as already said, that indebtedness was $4,554.-50, which was less than the initial loss, which, by the terms of the contract, was to be borne by plaintiffs before any liability attached to defendant. The plaintiffs claim, however, and so the referee has held, that the highest previous indebtedness as used in the contract means the largest amount for which the customer was ever indebted prior to taking out of the bond, whether that indebtedness was ever paid or not. It will be observed that in this particular instance the defendant, at plaintiffs' request, substituted "experience" as the test of the liability for any customer, in place of the arbitrary, but certain, liability based upon the customer's rating with the commercial agencies. This, of course, means the plaintiffs' experience with the several customers. In other words, the defendant was willing to insure the credit of each of plaintiffs' customers to an amount that plaintiffs' experience with such customers indicated would be a reasonably safe credit. Experience, as commonly understood, means the knowledge gained by observation or trial, and it is in that sense that it must be deemed to have been used in the present instance. When therefore, the contract made the plaintiffs' experience with their customers the test of defendant's liability, it meant the plaintiffs' knowledge of the financial responsibility of these customers gained by actual trial. The only experience that would be valuable upon such a subject would be that derived from a knowledge of the financial responsibility of the customers proven by the amount of indebtedness that they had shown themselves able to meet and pay. The amount that they had incurred and not paid would afford no guide to a knowledge of their financial ability. The words in the application, "Experience shall be the basis for credit under this bond as specified in Schedule A," and the words in Schedule A, "An amount not exceeding the highest previous indebtedness for goods shipped by the indemnified to the debtor within 24

months prior to shipping the first item of goods included in the account upon which the loss occurred," must be read together, as meaning that defendant would insure plaintiffs against such an amount as their previous experience with each customer indicated was an amount for which the customer could probably be allowed to become indebted with a reasonable assurance that he would be able to pay. The best test of this was the amount that he had previously proven himself able to pay. Furthermore, the language speaks of the past and refers to a "previous" indebtedness, while, strictly speaking, an indebtedness which was still unpaid when the bond was issued was a "present," and not a "previous," indebtedness. An experience which would justify a prudent creditor in again extending credit to a debtor must be a satisfactory experience, and an experience cannot be said to be satisfactory which simply indicates the extent of a debtor's willingness to incur debts, and does not show his ability to pay (Philadelphia Casualty Co. v. Cannon, 133 Ky. 745, 118 S. W. 1004). Our conclusion, therefore, is that the "highest previous indebtedness" referred to in the contract means the highest indebtedness which any debtor had paid before the execution of the bond.

There is still another reason why the plaintiffs may not recover for their loss by the failure of the Consumers' Coffee Company. As has been said, more than $11,000 of this indebtedness was incurred after September 1, 1902, and before January 1, 1903. The bond as originally drawn covered only losses incurred between January 1, 1903, and December 31, 1903, and applied only to goods shipped after January 1, 1903. Under this provision, the defendant would not have been liable for the loss on the goods shipped to the Consumers' Coffee Company between September 1, 1902, and January 1, 1903. By one of the riders, however, it was provided that:

"Outstandings on the books of the indemnified January 1st, 1903, shipped since September 1st, 1902, shall be covered upon the same conditions and shall be included in the same manner as if the goods had been shipped since January 1st, 1903."

The effect of this clause was to stretch the bond backward and make it effective as if it had been executed September 1, 1902. When we refer back to the clause limiting liability, we find that the highest previous indebtedness therein referred to is to be one within 24 months "prior to shipping the first item of the goods included in the account upon which the loss occurred." The account upon which the loss occurred obviously means the account covered by the bond, so that the clause last quoted must be read as meaning the highest previous indebtedness within 24 months prior to the first item of the account covered by this bond. As originally drawn, the period was 24 months prior to January 1, 1903. When the liability upon the bond was stretched backward so as to cover shipments after September 1, 1902, the 24 months were also pushed back, and the limit of indebtedness was fixed at the highest previous indebtedness within 24 months prior to September 1, 1902. This, as has been said, was only $4,554.50, which was less than the initial indebtedness agreed to be borne by plaintiffs. On the defendant's appeal, therefore, we are constrained to overrule

the referee, and to hold that no liability attached to the defendant in respect of the loss by reason of the insolvency of the Consumers' Coffee Company.

The plaintiffs' appeal calls in question the disallowance by the referee of certain claims, based upon losses arising from the insolvency of James P. Bennett, Edward G. Byrnes, and Samuel Wilde's Sons. The reason for rejecting these claims was that to none of the preliminary notices of loss by these debtors was there attached any copy of the account of the plaintiffs showing their prior experience with the debtor. In thus rejecting these claims the referee kept strictly within the lines of the contract. The rider, Schedule A, attached to the bond, and which contains most of the special clauses rendered necessary by the substitution of experience for rating as the limit of defendants' liability, contains this provision:

"But the loss on any such customer (that is one with whom plaintiffs had had previous experience) shall not be covered unless the preliminary notice thereof has attached to it, a copy of the account showing the prior experience with such debtor."

Nothing can be more specific than this language, and the reason for its insertion is manifest. Defendant was about making a contract rendering itself liable for losses incurred by plaintiffs limiting its liability, however, to what might be deemed a reasonably safe limit of credit based upon plaintiffs' previous experience with its several customers and limited as to each customer by his highest previous indebtedness. It was clearly within defendant's rights, and to its interest, to require that, with a notice of loss, should be supplied a copy of the defaulting customers' account, to the end that defendant could at once determine to what extent it had become liable. The referee has dealt satisfactorily with the questions raised by plaintiffs' appeal, and we find no reason to differ from the conclusions he has reached on this subject. All the necessary facts are found by the referee to enable us to modify the judgment in accordance with the foregoing opinion, and it will therefore be unnecessary to put the parties to the delay and expense of a new trial.

The judgment will accordingly be modified by deducting therefrom the sum allowed on account of the loss by reason of the Consumers' Coffee Company's insolvency, being $3,664.55, with interest from February 19, 1904. The extra allowance must also be stricken out, as there is no longer a basis for estimating it.

As so modified, the judgment will be affirmed, with costs to the defendant-appellant.

McLAUGHLIN, CLARKE, and DOWLING, JJ., concur.

INGRAHAM, P. J. I do not agree with Mr. Justice SCOTT in his construction of this policy concerning the loss to the Consumers' Coffee Company. It seems to me that what the parties intended was that the plaintiffs should not incur indebtedness after the policy was granted to a greater extent than they were willing to grant without the security of the policy. The various modifications of this policy by

the defendant have rendered its construction difficult. These plaintiffs were in the business of selling merchandise to its customers. They had refused to take out a policy in the ordinary form, based upon the rating given by commercial agencies, but were willing to take out a policy which would insure them against loss to their customers, based upon their experience with their customers, but not based upon the customers' rating with the commercial agencies. That experience depended, not upon the amount that the customers had been able to pay, but upon the amount of credit that they had been willing to allow their customers when not insured. Mr. Justice SCOTT says in his opinion that "the amount that they had incurred and not paid would afford no guide to a knowledge of their financial ability." That may be true, but it was what the plaintiffs in the usual course of business had thought it was safe to sell to a particular customer that was substituted for a rating; and it was then stated that the insurance was to cover an amount "not exceeding the highest previous indebtedness for goods shipped by the indemnified to the debtor within 24 months prior to shipping the first item of goods included in the account upon which the loss occurred." It seems to me that it was intended to cover a sale based upon the previous indebtedness which the plaintiffs were willing to extend to a particular customer when they were not insured, and not the highest previous indebtedness of the customer that had been paid.

I therefore dissent from the modification; but, as to the other questions discussed by Mr. Justice SCOTT, I concur with him.