(153 App. Div. 180.)

### PRINGLE BROS. v. PHILADELPHIA CASUALTY CO.

(Supreme Court, Appellate Division, First Department. November 22, 1912.)

1. INSURANCE (§ 511*)—CREDIT INSURANCE BOND—CONSTRUCTION—"HIGHEST PREVIOUS INDEBTEDNESS."

In an experience clause of a credit insurance bond, which provided that the insurer should be liable for an amount not exceeding the "highest previous indebtedness" for goods shipped within 12 months prior to the shipping of the first item upon which loss should occur, the phrase quoted meant the highest indebtedness which had been paid, and not merely the highest indebtedness contracted, though the experience clause was not mentioned in the application, but was included later at plaintiff's request.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1296, 1297, 1299; Dec. Dig. § 511.*]

2. INSURANCE (§ 144*)—MODIFICATION OF POLICY.

A letter written by an insurer to insured, relative to the terms of an insurance contract, did not operate to modify such terms, in absence of a showing that the letter was in response to some request from insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 273–275; Dec. Dig. § 144.*]

3. INSURANCE (§ 144*)—CONTRACTS—INTERPRETATION.

A letter written by an insurer to insured, relative to the terms of the insurance contract, *held* not inconsistent with the terms of the policy, but rather a reiteration of such terms.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 273–275; Dec. Dig. § 144.*]

4. INSURANCE (§ 511*)—CREDIT INSURANCE—INTEREST.

An insurer issuing a policy covering credits was not liable for interest on the amount of a loss prior to the time that the defaulting debtor was chargeable with interest.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1296, 1297, 1299; Dec. Dig. § 511.*]

5. APPEAL AND ERROR (§ 1175*)—DETERMINATION—GRANT OF NEW TRIAL.

Where the error alleged is one of law, and the parties have substantially agreed upon all calculations in determining the amount of indebtedness, the appellate court will not, on reversal, remand the cause for a new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from Judgment on Report of Referee.

Action by Pringle Bros. against the Philadelphia Casualty Company upon a credit insurance bond. From a judgment for plaintiff upon the report of a referee to hear and determine, and from an order granting an extra allowance, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

O'Brien, Boardman & Platt, of New York City (Frank H. Platt, of New York City, of counsel, and Livingston Platt, of New York City, on the brief), for appellant.

Zabriskie, Murray, Sage & Kerr, of New York City (Henry G. Gray, of New York City, of counsel), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARKE, J. Plaintiffs are merchants in Charleston, S. C. Defendant is an insurance company.

The action is on a credit insurance policy or bond. The bond is dated November 14, 1902, and the period covered thereby is from October 30, 1902, to December 31, 1903. The initial loss to be borne by the insured was 1 per cent. of the actual sales and shipments. The outside limit covered by the bond was the sum of $10,000; the obligation upon a single account being limited to $5,000. The actual sales and shipments proved by the plaintiff were $689,542.16. Therefore the initial loss was $6,895.42. The referee found the total loss to be $9,-556.99. Subtracting the initial loss made the amount due by the defendant $2,661.57, to which interest at 6 per cent. from March 1, 1905, amounting to $1,233.63, was added, making a total of $3,895.20.

The bond had five riders attached thereto, which modified, in certain respects, not only the bond, but the riders inter sese. In the contract, so evidenced, a differentiation was made between old customers and new customers. They were defined as follows:

"Customers to whom the indemnified has shipped goods within said 12 months specified in paragraph DD of this ride [that is, prior to shipping the first item of the goods included in the account upon which the loss occurred] shall be considered old customers, and customers to whom the indemnified has shipped no goods within said 12 months, or to whom the indemnified never sold any goods, shall be considered new customers."

In the Schedule A. the ratings of R. G. Dun & Co.'s Mercantile Agency for the first and second grade are set forth. The provision goes on:

"Old customers shall not be covered by the sum set opposite such customers' rating in the above schedule, but entirely according to paragraph DD of this rider."

Paragraph DD is as follows:

"Blank Blank as to both capital and credit, or whose name is not printed in the designated agency book, or who is rated or not rated, shall be covered for an amount not exceeding the highest previous indebtedness for goods shipped by the indemnified to the debtor within 12 months prior to shipping the first item of the goods included in the account upon which the loss occurred, not exceeding, however, $5,000. But the loss on any such customer shall not be covered unless the preliminary notice thereof has attached to it a copy of the account showing the prior experience with such debtor."

The schedule proceeds:

"And new customers, if they possess one of the ratings of the above first and second grades, shall be covered for the first bill for an amount not exceeding the sum set opposite such customer's rating thereon, but in no event exceeding $5,000, and if such new customer possesses one of the ratings of the above 3rd or 4th grades or is rated entirely blank as to both capital and credit he shall be covered for the first bill for an amount not exceeding $1,500, provided the indemnified has, within thirty days prior to the shipment of the goods, obtained two written trade references stating nothing detrimental to the character and manner of payment of the customer. A loss on a new customer shall, however, not be covered unless there is attached to the preliminary notice of loss a memorandum that such customer is a new customer and if the loss is claimed to be covered on such references, that the same are also attached to such preliminary notice of loss. Goods shipped to a new customer subsequent to the first bill [the words 'first bill' including

all items shipped up to the date the first items shipped become due] shall not be covered unless such first bill has first been paid, and after such first bill has been paid such new customer shall be considered an old customer and covered according to paragraph DD."

It further provides:

"Increases of credit to old customers shall be covered for 50% of the increase, but the total indebtedness, including the increase, shall not exceed $5,000."

[1] The first point made by the appellant is that the referee allowed certain claims on losses through "old customers," each of whom he found was covered under paragraph DD "for an amount not exceeding the highest previous indebtedness for goods shipped * * * within 12 months prior to shipping the first item of goods included in the account upon which the loss occurred," and claims that this ruling was erroneous, being in flat contradiction to the holding of this court in Steinwender v. Phila. Casualty Co., 141 App. Div. 432, 126 N. Y. Supp. 271, where the precise clause in this bond, as amended by the rider, was under consideration. In that case this court held, Mr. Justice Scott writing, that the "highest previous indebtedness" referred to in such an experience clause meant the highest indebtedness which had been paid prior to the execution of the bond, because that was the only experience which would have been of any value in fixing the amount of credit. I cannot differentiate the case at bar from that case. The terms of the clauses in the two contracts are identical. An attempt to distinguish cannot be successful.

The first ground claimed, in the effort to distinguish, is that in the application in the case at bar no experience basis is alluded to. The answer to that is that this contract was made after the greatest amount of consideration and negotiation; and that this rider, at the express instance of the plaintiff, was amended to make it identical to that in the Steinwender Case.

[2] The next ground is that the letter of Maybaum, the representative of defendant, of March 31, 1903, either interpreted the contract, or altered it. I do not think it could alter the contract; nor do I think it interpreted it, as plaintiff urges. In the first place, it was in answer to some request contained in a letter of the plaintiff's, which is not produced. If that letter contained any such suggestion as now claimed, it certainly would have been produced.

[3] The first paragraph of the Maybaum letter, which is not quoted or alluded to by the referee, says:

"In reply to yours of the 27th, we desire to state that you do not need references on old customers. Paragraph DD only requires you to send us the past experience to cover such a customer; in other words, you are covered on such a customer up to the highest previous experience as provided for in said paragraph without references."

And further on in the letter, after stating that "you are covered on two classes of customers," he says, speaking of the increases:

"But as soon as the increased indebtedness is paid, such customer is immediately thereafter covered in full up to the increased sum, subject to the bond."

· And at the conclusion:

"Your Mr. Pringle stated to me that if I would send him the rider, which was sent, that the would be satisfied to accept the bond and we will not make any further changes or additions than we have made."

That letter seems to me to be so far from a change or alteration of the terms of the bond that it reiterates and insists upon it. Therefore it seems to me that the learned referee erred in not following the Steinwender Case.

Of these claims, the respondent admits that if the appellant's interpretation of "indebtedness" means "paid indebtedness" that its calculation, as set forth in detail under the first point, is correct as to several; and, while the figures as to others differ, it admits that, computed on the appellant's theory, the difference from the plaintiff's recovery, if adopted, would be $2,040.74. The appellant's figures, corrected slightly in the last item in its reply brief, amount to $2,700.89. The total allowed was $9,556.99. If we subtract the $2,700.89, it leaves $6,856.10, but the initial loss was $6,895.42, so that upon this one item on appellant's claim there would be nothing due at all; while, if we take the respondent's figures upon the appellant's theory, there would be only $420.83 due.

The referee himself made up a schedule on the limit of credit covered on the basis of "previous indebtedness paid," which totaled $2,681.04, which should be taken from the total amount, which leaves $6,875.95, which is some $20 less than the initial loss.

[4] It seems clear that $218.27 interest charges in the account should be subtracted, because interest should not be charged against the defendant prior to March 1, 1904, the date when payment was due. These were interest charges on the bills, and they should be taken from the allowance made by the referee and from the computation of losses.

In my opinion the plaintiff is not entitled to recover any amount, because by making the corrections heretofore indicated the losses are less than the amount fixed by the contract as the initial loss to be borne by the indemnified. It becomes unnecessary, therefore, to consider the many other questions raised by the appellant, which, however, we have examined and think, in the main, correctly decided by the learned referee.

[5] As the error is one of law, and as the parties have substantially agreed upon all calculations, so far as the actual figures are concerned, their differences being based upon the rule of law to be applied, we do not think that a new trial is necessary. Therefore the findings of fact inconsistent with the views herein expressed will be reversed in accordance with the requirements of section 1317 of the Code of Civil Procedure, and a reference thereto will be inserted in the order to be entered hereon.

The judgment and order granting an extra allowance appealed from should be reversed and the complaint dismissed upon the merits, · with costs and disbursements to the appellant.

LAUGHLIN, SCOTT, and MILLER, JJ., concur. INGRAHAM, P. J., concurs in result.