PRINGLE BROTHERS, Appellants, *v.* THE PHILADELPHIA
CASUALTY COMPANY, Respondent.

Indemnity insurance — policy insuring plaintiff against losses
arising from bad debts — policy construed and held that plaintiff
is entitled to recover.

This action was brought to recover upon a so-called credit indem-
nity bond, which is in effect a policy of insurance against losses aris-
ing from bad debts. The policy insured plaintiffs "for an amount
not exceeding the highest previous indebtedness for goods shipped
by the indemnified to the debtor within 12 months prior to ship-
ping the first item of goods included in the account upon which
the loss occurred, not exceeding, however, $5,000. But the loss on
any such customer shall not be covered unless the preliminary
notice thereof has attached to it a copy of the account showing
the prior experience with such debtor." *Held*, that the liability of
the defendant and the indemnity to plaintiffs under this clause was
to be determined in an amount not exceeding the highest previous
indebtedness of the debtor *for goods shipped, within the time
stated*, not exceeding $5,000, and not "the highest indebtedness
which any debtor *had paid before the execution of the bond.*"
(*Steinwender* v. *Philadelphia Casualty Co.*, 141 App. Div. 432,
overruled.)

*Pringle Brothers* v. *Philadelphia Casualty Co.*, 153 App. Div.
180, reversed.

(Submitted January 26, 1916; decided April 18, 1916.)

APPEAL from a judgment, entered January 27, 1913,
upon an order of the Appellate Division of the Supreme

1

Court in the first judicial department reversing a judgment in favor of plaintiffs entered upon the report of a referee and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry G. Gray* for appellants. The referee's construction of the term "highest previous indebtedness" as used in the bond was correct. (*Paskusz* v. *Philadelphia Casualty Co.*, 213 N. Y. 22; *Gillet* v. *Bank of America*, 160 N. Y. 549; *Owen* v. *Farmers J. S. Ins. Co.*, 57 Barb. 518; *Amer. Credit Indem. Co.* v. *Wood*, 73 Fed. Rep. 88; *Grant* v. *Lex., etc., Ins. Co.*, 5 Ind. 23; *Sloman* v. *Credit Guarantee Co.*, 112 Mich. 25.)

*Frank H. Platt* and *Livingston Platt* for respondent. "Highest previous indebtedness" or "experience," as defined in the bond in suit, means highest previous indebtedness which any debtor had paid within twelve months prior to the shipment of the first item of goods upon which the loss occurred. The Appellate Division has so construed this clause, and its judgment should be affirmed. (*Steinwender* v. *Phil. Casualty Co.*, 141 App. Div. 432; *Phil. Casualty Co.* v. *Camnon & Byers Millinery Co.*, 133 Ky. 745.) The Appellate Division properly computed the losses on "old customers" under its interpretation of the clause "highest previous indebtedness." (*Bank of California* v. *Webb*, 94 N. Y. 467; *Camp* v. *Smith*, 136 N. Y. 187; *Harding* v. *Tifft*, 75 N. Y. 465.)

HOGAN, J. This action was brought to recover upon a so-called credit indemnity bond, which is in effect a policy of insurance against losses arising from bad debts. The contract in question is a lengthy document, and, together with the application for the same and five riders attached thereto, covers twenty pages of the record. The bond or policy bears date November 4, 1902, and was issued to plaintiffs, who were merchants engaged in business at Charleston, South Carolina.

The period of indemnity was from October 30th, 1902, to December 31st, 1903. The maximum amount for which the plaintiffs were insured against was ten thousand dollars and the obligation on a single account was limited to five thousand dollars. The plaintiffs were to bear one per cent of the amount of sales and shipments made by them, which sales and shipments aggregated $689,542.16, the initial loss at one per cent to be borne by plaintiffs being $6,895.42. The referee before whom the case was tried found the total loss sustained by plaintiffs was $9,556.99, and, after deducting the initial loss of $6,895.42, the referee determined that the amount due the plaintiffs under the policy was $2,661.57, to which interest was added and judgment awarded to the plaintiffs.

Upon appeal by defendant, the Appellate Division reversed two several findings designated by the referee as conclusions of law, which were denominated by the Appellate Division as findings of fact, reversed rulings made by the referee upon certain proposed requests to find matters of fact made by defendant refused by the referee, and thereupon ordered and adjudged that the order and judgment appealed from be reversed and plaintiffs' complaint be dismissed upon the merits.

The question presented on this appeal involves the construction of a clause of the indemnity policy. The policy makes distinction between "old" customers and "new" customers. By paragraph "O" of Schedule A, "old" customers are defined as customers to whom the indemnified has shipped goods within said twelve months specified in paragraph DD of that rider. The "twelve months" specified in paragraph DD is "twelve months prior to shipping the first item of goods included in the account upon which the loss occurred."

Paragraph "O" provides that "old" customers shall be covered entirely according to paragraph DD of the rider, and "goods shipped to a new customer subsequent to the first bill shall not be covered unless the first bill

has been paid, and after such first bill has been paid such new customer shall be considered an old customer and covered according to paragraph DD of this rider." New customers are also defined in paragraph "O" as "customers to whom the indemnified has shipped no goods within said twelve months or to whom the indemnified never sold any goods."

Paragraph DD reads as follows:

"DD — Blank blank as to both capital and credit ·or whose name is not printed in the designated Agency Book or who is rated with either of the above 1st, 2d, 3rd or 4th grade ratings *shall be covered for an amount not exceeding the highest previous indebtedness for goods shipped by the indemnified to the debtor within 12 months, prior to shipping the first item of goods included in the account upon which the loss occurred, not exceeding, however, $5,000.00.* But the loss on any such customer shall not be covered unless the preliminary Notice. thereof has attached to it a copy of the account, *showing the prior experience with such debtor.*"

The referee awarded plaintiffs judgment on losses sustained through certain old customers, each of whom he found was covered under the provisions of the. policy to which attention has been called. The Appellate Division followed a former decision made by that court in *Stein--wender* v. *Philadelphia Casualty Co.* (141 App. Div. 432), and held that the referee was in error. In the case cited, the Appellate Division held that the words "highest previous indebtedness" referred to in paragraph DD meant the highest indebtedness which any debtor had *paid* before the execution of the bond.

Justice SCOTT, writing for a majority of the court in that case, said "experience was the test of the liability for any. customer in place of the arbitrary but certain liability based upon the customer's rating with the commercial agencies. In other words, the defendant was willing to insure the credit of each of plaintiffs' customers to

an amount that plaintiffs' experience with such customers indicated would be a reasonably safe credit. 'Experience,' as commonly understood, means the knowledge gained by observation or trial and it is in that sense that it must be deemed to have been used in the present instance. The only experience that would be valuable upon such a subject would be that derived from a knowledge of the financial responsibility of the customers proven by the amount of indebtedness that they had shown themselves able to meet and pay. The amount that they had incurred and not paid would afford no guide to a knowledge of their financial ability. Furthermore, the language speaks of the past and refers to a 'previous' indebtedness, and while, strictly speaking, an indebtedness which was still unpaid when the bond was issued, was a 'present' and not a 'previous' indebtedness."

The contract of indemnity in question in complete form, as I have stated, is voluminous and covers a class of insurance so recently in operation that few decisions of the courts have been made relating to the same. The form of the contract furnishes an additional illustration of the differences likely to arise between lawyers as well as the courts in an interpretation of language employed in a contract, which conflict of opinion could readily be avoided by the use of plain and concise terms capable of interpretation by individuals seeking indemnity or prevailed upon to purchase and pay for the same. Insurance contracts should be free from ambiguity, and couched in language which clearly defines the liability of the indemnitor and the rights of the indemnified. Had the defendant in the contract in question intended to limit its liability to the "highest previous indebtedness" which had been *paid* by a debtor, it would have been a simple matter to use language which would clearly express such limitations, and at the same time enable the indemnified to understand the liability of the indemnitor to him.

I do not concur in the reasoning or determination of the Appellate Division. As I read the clause of the contract, the liability of the defendant and the indemnity to plaintiffs under Schedule A (DD) was to be determined in an amount not exceeding the highest previous indebtedness of the debtor *for goods shipped, within the time stated,* not exceeding $5,000, and not, as determined in this case and the *Steinwender* case, "the highest indebtedness which any debtor *had paid before the execution of the bond.*" The latter construction not only interpolates the word "paid" in the contract but extends the highest previous indebtedness beyond the time specified in the contract. The construction I have given to the clause under consideration of necessity compels me to dissent from the reasoning upon which the same is based. In clause DD is found the following: "But the loss on any such customer shall not be covered unless the preliminary notice has attached to it a copy of the account showing the prior experience with such debtor." The decision below proceeds upon the theory that "experience" as used in the clause in question would be "that derived from a knowledge of the financial responsibility of the customers proven by the amount of indebtedness that they had shown themselves able to meet and pay." The "preliminary notice" mentioned may be termed a notice of loss. It was a printed blank furnished by and required to be obtained from the defendant. It was in substance a notice of claim against an insolvent debtor and required the insured to state name and residence of the debtor, rating, if any, reasons why loss is covered other than on debtor's rating, with papers and information to substantiate such reason, the date and amount of each shipment, by what line goods were shipped, what security or collateral held, whether or not any offer of compromise had been made, what if any effort to compromise had been made, and if so, what steps had been taken to secure the claim and statement

of grounds of conclusion that the claim is a loss, and statement of terms of sale and discount.

The "copy of the account showing the prior experience with such debtor" required plaintiffs to furnish with the notice of loss an account showing the dealings between plaintiffs and the debtor for goods shipped, date of shipments, credits extended, extent and value of goods sold, payments made and balance due, or substantially a complete copy of the account from the plaintiffs' books. A failure to attach a copy of the account showing the prior experience with such debtor under the language used would exclude it from participation in the policy. This statement was not to be furnished until after a loss had been sustained.

Plaintiffs were engaged in the mercantile business, and necessarily had extensive dealings with numerous customers preceding the issuance of the policy in suit. They could not conduct business with any degree of safety unless they were acquainted with the financial responsibility and standing of the customers to whom they sold goods. Such information might be obtained through commercial agencies if the prospective customer was rated, by reference deemed by plaintiffs reliable or by personal investigation. It is reasonable to assume that plaintiffs before making sales to customers secured information from some source which enabled them to determine the amount of credit they could conservatively extend in each case. The amount of such credit may have been limited in the first instance and later on extended by reason of a knowledge of customers acquired by dealings with them; such knowledge founded upon actual experience would be a basis from which they could determine the risk they were ready to assume. Their business relations with a customer may have been satisfactory. Extended credit may have been granted for numerous reasons such as the habits and industry of a customer, increased business conducted by him at small

expense, promptness in payment of bills and other traits which may have been considered sufficient experience to extend further credit. At the time the policy in question was issued plaintiffs were within the definition of "experience" as stated by Justice SCOTT, for their knowledge of customers with whom they had dealings was gained by observation or trial, and in all probability by careful investigation. Such experience would be of greater value than an experience dependent alone upon the amount of a previous indebtedness paid. Their "prior experience" was not limited to an isolated transaction but clearly extended to that experience they had gained by observation or trial with customers with whom they had dealings. · Neither should we overlook the fact that under the policy the plaintiffs assumed a larger percentage of the loss than was assumed by the defendant. The facts in this case disclose the total sales made by the plaintiffs for the year aggregated $689,542.16. The total losses sustained by them according to the referee's figures was $9,556.99. Under the terms of the contract the initial loss assumed by the plaintiffs was $6,895.42, or about seventy-two per cent of the total loss. The loss sustained by the defendant was $2,661.57; approximately twenty-eight per cent of the total loss. In addition, plaintiffs were required to pay an annual premium of five per cent or upward on a maximum liability of ten thousand dollars.

The construction I have placed upon this contract is the more reasonable interpretation of the language employed, and this conclusion results in the reversal of the order and judgment of the Appellate Division. The judgment of the Appellate Division should be reversed and the judgment entered on the report of the referee affirmed, with costs in the Appellate Division and this court.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, CUDDEBACK, CARDOZO and POUND, JJ., concur.

Judgment accordingly.