LEXINGTON GROCERY COMPANY *v.* PHILADELPHIA
CASUALTY COMPANY.

(Filed 22 November, 1911.)

1. Insurance—Credit Bonds—Contracts—Evidence.

In this action brought upon a contract to indemnify against loss by giving credit, the application bond, and Schedule A, to which the bond refers, are construed as a contract of insurance between the parties.

2. Insurance—Credit Bond—Contracts—Construction—Intent.

A contract indemnifying a merchant against a credit loss should be construed more strongly against the insurer, and ambiguities should be reconciled, if possible, by gathering the intent of the parties from the whole instrument; and if the particular clause requiring interpretation cannot be thus brought into harmony with the rest of the contract touching the precise loss which the policy covers, that meaning is to be given to it which is most favorable to the insured.

3. Same—Ambiguity—Void Provisions.

When in an application by a merchant for a bond of indemnity for credit losses it is provided, "Experience shall be the basis for credit under the bond as specified on Schedule A," with a specified account limit, and it is expressly stipulated in the bond that Schedule A shall describe the class of customers to be covered by the bond, which specifies three classes of debtors, which may

be termed old customers, new customers, and those who are solvent, the fact that nothing is said in this schedule about insolvency at the time of the execution of the bond, when defining old and new customers, and that it is expressly provided that as to "outstandings" only those of the debtors who were solvent when the bond was executed were insured, indicates clearly the intent to insure the debts of old and new customers, created after the execution of the bond, although insolvent, provided the credit extended was based upon the experience of the insured; and an ambiguity in a different section of the bond, which is repugnant to the intent gathered from the whole instrument, that experience is to be the basis of credit extended, is void.

4. **Insurance—Credit Bond—Intent—Construction.**

An application for a bond of indemnity by a merchant for credit losses provided that credits covered by the bond were to be extended to customers upon the basis of experience, with limitation as to amount, etc., as contained in Schedule A of the bond accordingly issued. Paragraph 12, subsection B, of the bond, provided that it covered "the insolvency, etc., in this subsection" occurring between the date of the execution and termination of the bond. When construed in connection with the other parts of the bond under consideration in this case: *Held*, that experience being the basis of credit and that the debts insured are those covered by Schedule A, the intent of subsection B of paragraph 12 was to provide evidences of liability that would be satisfactory for small claims that did not exceed $150, which were divided into three classes, and that the proviso applies only to those three months overdue, or such as had been placed in the hands of a mercantile agency prior to the execution of the bond.

APPEAL from *Lyon, J.,* at April Term, 1911, of DAVIDSON.

The plaintiff is a corporation, doing business as a wholesale grocer at Lexington, N. C., and the defendant is a corporation which issues credit bonds upon certain conditions and in consideration of premiums paid.

On or about 22 January, 1908, the plaintiff made application to the defendant to issue for its benefit a credit bond, and in said application it is provided: "Experience shall be the basis for credit under the bond as specified on Schedule 'A,' with a single account limit not exceeding $2,000, shall be covered by said bond."

The premium was paid and on 27 January, 1908, said bond was issued in accordance with the application, and contains the following stipulations, among others not necessary to be stated:

"First.   If between the date of the execution of this bond and 22 January, 1909, on goods usually dealt in and at the time of shipment and delivery, solely owned by the indemnified and shipped *bona fide* and in the regular course of business since 23 February, 1908, the company receives preliminary notices of loss as required by this bond and Schedule A, upon which claim the actual loss sustained by the indemnified thereon as covered by this bond and Schedule A is in excess of $1,000, hereinafter called the initial loss, on sales and shipments not exceeding $400,000, or, if such sales and shipments as aforesaid exceed such sum, a proportionally increased initial loss, the company agrees to pay such excess loss, not exceeding the amount of this bond:  *Provided,*

"(a) That such losses shall have been sustained on claims against debtors, each of whom is covered by Schedule A attached hereto, signed by the president and secretary and countersigned by the actuary and one of the registrars of the company, and which is made a part hereof:  *Provided further,* that when a mercantile agency is designated in the application as a basis for some or all of the credits to be covered by this bond, that the last book printed by such agency prior to the shipment of the goods shall be the basis for covering such shipments from and including the first of the month appearing on such book.

"(b) That only claims on which losses occur, which exist (1) against a debtor who has effected a general compromise with his creditors; (2) against a debtor by or against whom a petition to be declared a bankrupt or insolvent has been filed under the Federal bankruptcy law, or under some insolvency or assignment law of any of the United States or any territory thereof; (3) against a debtor against whom an execution in favor of the indemnified or some other creditor has been returned unsatisfied; (4) against a debtor whose stock in trade has been sold in judicial proceedings; (5) against a debtor against whom, upon the ground of insolvency, a writ of attachment or replevin or other process has been issued; (6) against

a debtor who, upon the ground of insolvency, has transferred his stock in trade to a trustee or assignee under some assignment law for the benefit of his creditors; (7) against a debtor who has died, leaving his estate insufficient to pay his debts in full, and such fact is certified to by the executor or administrator or any court having jurisdiction thereof, and such certificate or a copy thereof is attached to the preliminary notice of loss; (8) against a debtor who, being a corporation, firm, or individual for whom a receiver has been appointed upon the ground of insolvency; (9) against a debtor where the legal proceedings show that, to defraud his creditors or avoid the payment of his debts, he has sold out or transferred his stock in trade; (10) against a debtor who has given a chattel mortgage for the benefit of his creditors; (11) against a debtor who has been found to be insolvent through judicial proceedings; (12) where a claim does not exceed $150 and none of the above state of facts have arisen, but the designated mercantile agency, a collection agency, or a practicing attorney in or near the place where the debtor did business reports, in writing, as to each of such claims, and such report is attached to the preliminary notice of loss, that the debtor has absconded, leaving no assets applicable to the payment of his debts, or that such claim is uncollectible and the issue of an execution would be useless, and that during a period of at least thirty days prior to the making of such report diligent efforts have been made to collect such claim or claims, and any claim which is more than three months overdue prior to commencement of said bond, and any claim that has been placed in the hands of such mercantile agency, collection agency, or attorney prior to the execution of said bond shall not be covered by this (12th) paragraph, but shall, so far as the same are covered by this bond and riders attached hereto, be included in the calculation of losses, provided the insolvency and one of the foregoing facts as enumerated in this subdivision 'b' occurs between the date of the execution and the termination of this bond.

"Second. Said Schedule 'A' shall describe the class of customers to be covered by this bond and the limit of credit to be extended to each of such customers."

Schedule A is as follows:

"CC. Customers to whom the indemnified has shipped goods within twelve (12) months prior to shipping the first item of the goods, wholly or partly included in the account upon which the loss was incurred, shall be considered old customers, and customers to whom the indemnified has shipped no goods within said twelve (12) months, or to whom the indemnified never sold any goods, shall be considered new customers.

"KK. Subject to the terms and conditions of the attached bond and this rider, old customers of the indemnified shall be covered for goods shipped during the term of the attached bond for an amount not exceeding the highest indebtedness such customer owed to the indemnified at one time, for goods shipped by the indemnified to such customer within twelve (12) months prior to shipping the first item of the goods wholly or partly included in the account upon which the loss was incurred, not exceeding, however, the amount paid upon such highest indebtedness during said period, but in no event exceeding $2,000 to one customer.

"LL. New customers of the indemnified shall be covered for an amount not exceeding fifty per cent (50%) of the first bill, but the gross amount of such first bill shall not exceed $1,000, and such customer shall be considered an old customer as to goods shipped after the first bill has been paid, and shall then be covered accordingly.

"RR. As a condition precedent to having any claim for excess loss under the attached bond and this rider, by reason of any loss or losses on such old or new customers, the indemnified shall attach to the preliminary notice of each loss, if an old customer, a copy of the account upon which the loss was incurred, and a copy of the account, with debits and credits, showing the highest prior indebtedness within said twelve (12) months; and if a new customer, a memorandum must be attached to the preliminary notice of the loss, stating that such customer was a new customer, or else such loss or losses shall be excluded from the calculation of losses.

"The words 'and the aggregate of all such claims filed does not exceed one-half of the initial loss,' in lines 51 and 52 of the attached bond, have been made void.

"The words beginning with the word 'there,' in line 70, and ending with the word 'and,' in line 82, have been made void.

"O. Outstandings on the books of the indemnified against solvent debtors on 23 January, 1908, shipped since 1 October, 1907, shall be covered upon the same conditions and shall be included in the same manner as if the goods had been shipped since the execution of the bond.

"Subject to the terms and conditions of the attached bond."

This action is to recover on said bond for losses, which the plaintiff alleges it has sustained.

An account between the parties was stated by a referee, and upon his report being filed, judgment was entered in favor of the plaintiff for the sum of $3,693.38, and the defendant excepted and appealed.

The exceptions present one question, and that is, whether accounts made after the execution of the bond, by persons who were then insolvent, are covered by the bond, if based on the past experience of the plaintiff with the persons making the accounts, and the defendant relies particularly on the proviso to paragraph 12 of subsection "b" of the bond, which reads as follows: "Provided the insolvency and one of the foregoing facts in this subsection 'b' occur between the date of the execution and termination of this bond."

The referee and his Honor held that such accounts were covered by the bond, and defendant excepted.

*E. E. Raper and McCrary & McCrary for plaintiff.*
*Walser & Walser for defendant.*

ALLEN, J. The application, bond, and Schedule A constitute the contract between the plaintiff and defendant, and it is a contract of insurance. *Shakman v. Credit System Co.,* 92 Wis., 374.

Speaking of such contracts, *Lacombe, Circuit Judge,* says, in *Tebbetts v. Guarantee Co.,* 73 Fed. Rep., 96: "Insurance against mercantile losses is a new branch of the business of underwriting and but few cases dealing with policies of that character have as yet found their way into the courts. The necessarily nice adjustments of the respective proportions of loss

to be borne by insurer and insured, the somewhat intricate pro-
visions which are required in order to make such business suc-
cessful, and the lack of experience in formulating the stipula-
tions to be entered into by both the parties to such a contract,
have naturally tended to make the forms of policy crude and
difficult of interpretation," and he quotes the rule of construc-
tion of ambiguous clauses laid down by him in *Guar. Co. v.
Wood,* 68 Fed. Rep., 529: "As that contract is a voluminous
document, prepared by the company, any ambiguity in its
phraseology should be resolved against the draftsman. . . . If
the particular clause requiring interpretation cannot be brought
into harmony with the rest of the contract, and the instrument
considered as a whole is ambiguous touching the precise loss
which the policy covers, that meaning is to be given to it which
is most favorable to the insured."

Frost on Guar. Ins., p. 572, also says, as to the rule of con-
struction, that, "All conditions limiting liability are to be
strictly construed. In the interpretation of conditions they are
to be construed liberally in favor of the insured and strictly
against the insurer. The policy should be interpreted in such a
way as to accomplish the general purpose had in view, and at
the same time give effect to all of its conditions, according to
their fair and reasonable meaning."

The contract before us is based on experience, not on rating,
and this means "the plaintiff's experience with the several cus-
tomers. In other words, the defendant was willing to insure
the credit of each of plaintiff's customers to an amount that
plaintiff's experience with such customers indicated would be
a reasonably safe credit." *Steinwender v. Cas. Co.,* 126 N. Y.
Sup., 271; *Cas. Co. v. Cannon,* 133 Ky., 748.

It is also expressly stipulated in the bond that Schedule A
shall describe the class of customers to be covered by the bond,
and if we turn to Schedule A we find three classes of debtors,
which may be termed old customers, new customers, and those
who are solvent owing outstandings. The fact that nothing is
said in this schedule about insolvency at the time of the execu-
tion of the bond, when defining old and new customers, and that
it is expressly provided that as to outstandings only those of

debtors who were solvent when the bond was execut ed are insured, indicates clearly that it was the purpose of the defendant to insure the debts of old and new customers, created after the execution of the bond, although insolvent, provided the credit extended was based on experience.

If we were to construe the proviso to paragraph 12 of subsection "b" as the defendant contends, and hold that claims against debtors who were insolvent at the time the bond was executed, although based on experience, are not protected by the bond, we would change the entire contract between the parties, and say that experience is not the basis of credit under the bond, but solvency.

It is argued that the construction contended for by the plaintiff is unreasonable, and that it cannot be supposed that the defendant would permit sales to insolvent persons, and insure them.

It would be sufficient answer to say that it has done so; but if the contract is examined, it will be found that the rights of the defendant are carefully safeguarded.

The plaintiff did not have an unlimited discretion in making sales. Claims against old customers were not insured beyond the highest amount paid by them on indebtedness created within twelve months prior to the execution of the bond, and in no event in excess of $2,000, and the indemnity as to the new customers does not exceed 50 per cent of the first bill, which could not exceed $1,000, and after the first bill, new customers were classed as old customers.

The experience of wholesale and retail dealers has doubtless shown that it is reasonably safe to sell to men who are not solvent, but who have good character and good habits, and who are accustomed to pay, and for this reason experience and not solvency has been adopted as the standard.

This being the plain purpose of the contract, if the proviso relied on by the defendant is repugnant to it, it would be our duty to reject it, but we do not think the repugnancy exists.

Subsections (*a*) and (*b*) are provisos to the first stipulation or agreement in the bond, and subsection (*a*) provides that

the debtors included in the bond are those covered by Schedule A, while subsection (*b*) enumerates the evidences of liability by the defendant.

Paragraph 12 of subsection (*b*) is obscure, and it is difficult to ascertain its meaning.

Some word is evidently omitted before the word "shall," and the test of insolvency is to be applied to some claim.

It cannot be applied to the claims of $150 first mentioned in the paragraph, because it says that, in addition to insolvency, one of the foregoing facts enumerated in subsection (*b*) must exist, and it is provided as to the claims first mentioned that it is not necessary for any of the foregoing facts to exist, and it cannot be applied to all the claims covered by the bond, because that would give it an effect which would withdraw claims covered by Schedule A and would make solvency the test.

If we bear in mind the purpose of the contract, and that experience is the basis of credit; that the claims to be insured are those covered by Schedule A, and that subsection (*b*) is intended to furnish the evidences of liability, and read paragraph 12 in the light of these facts, we think the purpose of the paragraph was to provide evidences of liability that would be satisfactory for small claims that did not exceed $150, and that these small claims are divided into three classes, and that the proviso applies only to those three months overdue, or such as had been placed in the hands of a mercantile agency prior to the execution of the bond. As thus construed, the paragraph reads as follows:

"(12) Where a claim does not exceed $150 and none of the above state of facts have arisen, but the designated mercantile agency, a collection agency, or a practicing attorney in or near the place where the debtor did business reports in writing as to each of such claims and such report is attached to the preliminary proof of loss, that the debtor has absconded, leaving no assets applicable to the payment of his debts, or that such claim is uncollectible and the issue of an execution would be useless, and that during a period of at least thirty days prior to the making of such report diligent efforts have been made to collect such claim or claims, they shall, so far as they are covered by

this bond and riders attached hereto, be included in the calculation of loss, and also any such claim which is more than three months overdue prior to the commencement of this bond, or that has been placed in the hands of such mercantile agency, collection agency, or attorney prior to the execution of this bond, shall also be included, provided the insolvency and one of the foregoing facts from 1 to 11 inclusive, as enumerated in this subdivision (b), occurs between the date of the execution and the termination of this bond."

In our opinion, there is no error.

Affirmed.